ANN BIRMINGHAM SCHEEL
Acting United States Attorney
District of Arizona

Raymond K. Woo
Arizona State Bar No. 023050
raymond.woo@usdoj.gov

Kevin R. Rapp
Arizona State Bar No. 014249
kevin.rapp@usdoj.gov

Assistant U.S. Attorneys
Two Renaissance Square
40 North Central Avenue, Suite
Phoenix, Arizona 85004
Telephone (602) 514-7500

UNITED STATES DISTRICT COURT

DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>            Plaintiff,<br><br>      v.<br><br>Henry Oliver Ford,<br>a.k.a. Cleothus Lefty Jackson,<br><br>            Defendant. | CR-10-00717-001-PHX-SRB<br><br>**UNITED STATES' MOTION FOR DOWNWARD DEPARTURE PURSUANT TO U.S.S.G. § 5K1.1, AND SENTENCING RECOMMENDATION** |

The United States of America hereby moves for a downward departure pursuant to U.S.S.G. § 5K1.1 and Title 18 U.S.C. § 3553 for the reasons set forth in the attached memorandum and recommends that the court impose a sentence of twenty-six months. Defendant Henry Oliver Ford's (hereinafter "Ford") sentencing is scheduled for December 12, 2011.

Respectfully submitted this 6th day of December, 2011.

ANN BIRMINGHAM SCHEEL
Acting United States Attorney
District of Arizona

*s/Raymond K. Woo*

RAYMOND K. WOO
KEVIN R. RAPP
Assistant U.S. Attorneys

# MEMORANDUM

The United States of America (hereinafter "the government"), by and through its undersigned attorney, respectfully moves pursuant to 18 U.S.C. § 3553(e), 28 U.S.C. § 994(n), and U.S.S.G. § 5K1.1 to authorize this Court to depart downward from the minimum sentence dictated by the advisory Sentencing Guidelines for the offense to which Ford has entered a guilty plea. In support of its motion, the government states as follows:

## I.   MOTION FOR A 5K1.1 DOWNWARD DEPARTURE

Section 5K1.1 of the Sentencing Guidelines allows the court to depart downward in criminal sentence if the defendant provided substantial assistance to the government. The Court determines the appropriate reduction after considering certain factors. Those factors include, but are not limited to the following:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered:

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the assistance.

### A. Analysis of Factors Pursuant to U.S.S.G. §5K1.1.

#### 1.   Significance and Usefulness of Ford's Assistance

The government believes that Ford's cooperation is sufficient to warrant its motion for a 5K1.1 downward departure. Ford has provided useful information about his involvement with loan officer Vincent Vendittelli (hereinafter "Vendittelli"), Jason Mark Chrzanowski, Jerry Craig, Sr. (hereinafter "Craig Sr."), Marc Bordner, Jerry Craig, Jr. (hereinafter "Craig Jr."), and others. Among many things, Ford confirmed that he worked with Vendittelli to obtain loans for straw

buyers he recruited through his company the Rashard Dollar Company. Ford confirmed that this straw buyers' loan applications contained false representations because they did not have the financial qualifications to legitimately obtain the loans applied for from the lending institutions. Ford assisted the government in understanding the role played by Marc Bordner. Ford corroborated the government's information that he met with Craig Sr., and sometimes Craig Jr., on several occasions. Ford confirmed that Craig Sr. and Craig Jr. would elicit his assistance in obtaining straw buyers for properties that were purchased with loans issued by SFG. Ford confirmed that he paid money to Craig Sr., during the conspiracy, to continue receiving loans from SFG for the unqualified straw buyers that he recruited.

Ford's early cooperation likely caused some of his co-defendants to accept the government's plea offer. In addition, Ford's information furthered the government's criminal investigation and case against the Craigs.

### **2.    Truthfulness, Completeness and Reliability of Information and Testimony**

Based on the government's investigation to date, Ford has provided truthful information with respect to his involvement in the mortgage fraud scheme, and the roles played by Vendittelli and the Craigs. However, Ford has not always been completely forthcoming about his criminal actions and has, at times, minimized his involvement and knowledge of the mortgage fraud. Nevertheless, Ford has admitted his role in the offense, corroborated some information known by the government, and provided information that implicated other indicted and un-indicted co-defendants. Accordingly, the government submits that Ford provided truthful information regarding certain aspects of the mortgage fraud scheme.

### **3.    Nature and Extent of Defendant's Assistance**

Ford's assistance to the government was significant. Ford's information assisted the government in understanding the roles of Vendittelli, Marc Bordner, Jason Chrzanowski, Craig Sr., Craig Jr., and others, during the execution of the fraud. Ford was not the first defendant to provide useful cooperation; however, he was the first defendant to plead guilty and agree to

cooperate openly with the government. Ford's early cooperation, and willingness to cooperate openly, likely caused others co-defendants to plead guilty.

### 4. Danger of Risk of Injury

The government is not aware of any threats that Ford faces due to his cooperation. A cooperator, however, is always exposed to some degree of threats and intimidation especially while in custody. Accordingly, the government finds the risk of injury to Ford, due to his cooperation, as moderate.

### 5. Timeliness of Assistance

Ford's assistance was timely. Ford's early acceptance and cooperation assisted the government in obtaining guilty pleas from some of the other co-defendants. In addition, Ford's assistance was timely enough to assist the government in its case against Craig Sr. and Craig Jr..

## II. ANALYSIS OF THE FACTORS UNDER SECTION 3553(a)

The government respectfully submits that a sentence of 26 months of imprisonment is a reasonable sentence that will best effectuate the 18 U.S.C. 3553(a) factors.

### A. Nature and Circumstances of the Offense

Ford actively recruited straw buyers to purchase properties on his behalf. He was well-aware that his straw buyers were financially unqualified to obtain the loans they received. To conceal himself from the lenders, Ford created numerous shell corporations to receive the excess loan proceeds he was not lawfully entitled to. With his ill gotten gains, Ford lived a lifestyle that included expensive vehicles and Paradise Valley homes.

In total, Ford's straw buyers fraudulently obtained over 11 million dollars in loans, and caused millions of dollars of losses to lending institutions. The criminal acts by Ford and others not only harmed lending institutions, but also contributed to the Arizona housing market implosion when the straw buyers, who lacked the financial means to pay for the inflated mortgages, defaulted on the mortgages. All of these facts support the imposition of a significant term of imprisonment.

**B. History and Characteristics of the Defendant**

Ford willingness to engage in serious criminal conduct for personal gain is a serious character concern. Ford's arrest history for domestic violence is another character concern. In addition, some of Ford's financial transactions with his company, the World Food Organization, and with other third parties, are highly questionable and raise concerns about his ability to remain law abiding in the future.

To Ford's credit, however, he does not have any prior criminal convictions or recent law enforcement contacts related to domestic violence. Ford has the support of his family and has a stable relationship with his wife. In addition, Ford provides financial support to his four children in Arizona.

The government submits that Ford's characteristics as a person, and his history, slightly weigh against his favor.

**c. Adequate Deterrence/Protection to the Public.**

This factor supports the imposition of a prison term. The mortgage fraud implosion from 2005 to 2007 will profoundly impact the economy for the foreseeable future. A significant penalty should be imposed in mortgage fraud cases to deter others from using false information to obtain money from banks.

**d. Promote Respect for the Law and Provide Just Punishment.**

The United States submits that a guideline sentence will promote respect for the law and provide just punishment.

**III. SENTENCING PARITY WITH SIMILARLY SITUATED DEFENDANTS**

With respect to sentencing parity, the government submits Exhibit A, which is a government prepared spreadsheet which details sentences imposed for other mortgage fraud schemes prosecuted since 2008. (See Attached Exhibit A).[1] For the reasons set forth below, the government recommends that a 26-month term of imprisonment is a reasonable sentence when

---

[1] This spreadsheet details relevant information about mortgage fraud defendants prosecuted in the District of Arizona since 2008. It is frequently provided to defense attorneys during plea negotiations.

considering the defendant's offense, his history and characteristics, his cooperation with the government, and the other sentences imposed for other defendants.

First, nothing in the plain language of 18 U.S.C. § 3553(a)(6) requires the Court to compare the sentences imposed on a range of defendants with Ford in the instant case. That subsection requires a sentencing Court to consider "the need to avoid *unwarranted* sentencing disparities among defendants with similar records who have been found guilty of similar conduct." *Id.* (emphasis added). The statute fails to instruct a sentencing Court on the manner of inquiring into putative sentencing disparities, and the Ninth Circuit has not addressed this manner of inquiry in the advisory Guidelines era; other Circuits have, however, and those Circuits have overturned sentences rigidly compared against average sentencing statistics. E.g., *United States v. Willingham*, 497 F.3d 541 (5th Cir. 2007). In *Willingham*, a case involving the possession of child pornography, the Court remanded for resentencing where a district court compared defendant's sentence to the average sentences compiled by the U.S. Sentencing Commission and reduced the sentence accordingly. *Id.* at 545. Averages "disregard individual circumstances and only reflect a broad grouping of sentences imposed on a broad grouping of criminal defendants; consequently, they are basically meaningless in considering whether a disparity with respect to a particular defendant is warranted or unwarranted." *Id.* at 544-45.

In the instant case, the Court has more than mere averages; the Court has a detailed chart, that sets out a series of objective factors, including the number of properties involved in the scheme, the loss attributable to the defendant, criminal history score, whether defendant cooperated and the sentence imposed. A chart cannot, however, describe the intangible statutory factors that a sentencing Court considers under 18 U.S.C. § 3553, including the history and characteristics of defendant, the need to deter further criminal conduct on the part of the individual defendant and the need to provide the defendant with correctional treatment "in the most effective manner". 18 U.S.C. § 3553(a)(1), (2)(B) and (2)(D). Moreover, to the extent these intangibles could be compiled, in the form of sentencing transcripts of each putative comparator case, such a compilation might run afoul of Fed. R. Crim. P. 2, with its aspiration

6

to "secure simplicity in procedure and fairness in administration, and to eliminate unjustifiable expense and delay." Furthermore, "[a] reviewing court's concern about unwarranted disparities is at a minimum when a sentence is within the Guideline range." *Willingham*, 497 F.3d at 545.

Even if the Court were to consider comparator cases, Section 3553(a)(6) by its express terms permits certain disparities, i.e., those that are warranted by particular facts or by disposition parameters particular to district courts in different regions. *See, e.g. United States v. Marcial-Santiago*, 447 F.3d 715, 718-19 (9th Cir. 2006) (holding that disparities created among defendants in different districts in illegal reentry cases by "fast-track" disposition programs are not "unwarranted"). The Court in *Marcial-Santiago* also confirmed that even an unwarranted disparity would not automatically render a sentence unreasonable. "[T]he need to avoid unwarranted sentencing disparities is only one factor a district court is to consider in imposing a sentence." *Id.* at 719.

Ford is most similar to defendant Roy Fife. (*See* Exhibit A, Roy Fife, CR 08-00744-TUC-CKJ.) Fife's conspiracy involved 17 properties, resulted in $3,600,000 losses, he cooperated--albeit late--was in a criminal history category II and received a sentence of 30 months.

## IV.    GOVERNMENT'S SENTENCING RECOMMENDATION

The government submits that a sentence of 26 months of imprisonment is a reasonable one, that satisfies the concerns under Section 3553(a). As explained herein, Ford engaged in serious criminal offenses to personally profit.  Ford formed, owned and managed Rashard Dollar Company which was in the business of using third party straw buyers to obtain fraudulent loans.  Ford's straw buyers obtained over 12 million dollars in fraudulent loans which he enriched himself from.  Ford should be sent to prison his criminal acts.

However, Ford's lack of any prior convictions weigh heavily in his favor, and he should receive a benefit for his substantial assistance to the government. The government therefore recommends the following guideline calculation:

| | | |
|---|---|---|
| Base Offense Level: | 7 | U.S.S.G.§ 2B1.1(a)(1) |
| Specific offense Characteristic: | +18 | U.S.S.G. § 2B1.1(b)(1)(J) |

| | | | |
|---|---|---|---|
| Specific offense Characteristic: | | +2 | U.S.S.G § 2B1.1(b)(14)(A)($1,000,000 in gross receipts from financial institutions) |
| Adjustment for Role: | | +2 | U.S.S.G. § 3B1.1(c) |
| Acceptance of Responsibility: | | -3 | U.S.S.G. § 3E1.1(a) |
| Substantial Assistance: | | -8 | U.S.S.G. § 5K1.1 |
| Total Offense Level: | | 18 | |

The applicable guideline range, based on the above calculation, in a criminal history category I, is 27-33 months. For all of the reasons stated herein, the government recommends that the Court sentence Ford to 26 months of imprisonment.

Respectfully submitted this 6th day of December, 2011.

ANN BIRMINGHAM SCHEEL
Acting United States Attorney
District of Arizona

*s/Raymond K. Woo*

RAYMOND K. WOO
KEVIN M. RAPP
Assistant U.S. Attorneys

**CERTIFICATE OF SERVICE**

I hereby certify that on December 6, 2011, I electronically transmitted the attached document to the clerk's office using the CM/ECF System for filing documents and sent the attached document to the following CM/ECF registrant: Marc Victor, Timothy Eckstein, Philip Hantel, Brad Reinhart, and Michael Yusevicious.